STATE, Respondent, v. VAN ARK, Appellant.

*No. State 97. Argued January 4, 1974.—Decided February 5, 1974.*
(Also reported in 215 N. W. 2d 41.)

---

156

158

For the appellant there were briefs by *Carl W. Kuehne* and *Kaftan, Kaftan, Kaftan, Kuehne & Van Egeren, S. C.,* all of Green Bay, and oral argument by *Carl W. Kuehne.*

For the respondent the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

BEILFUSS, J. The defendant raises three issues:

1. Was the defendant prejudicially denied due process by the failure of the prosecution to produce the entire written investigative report of the police?

2. Was the defendant prejudiced by refusal of the trial court to submit a verdict and instruction on the bomb scare statute as a lesser included offense?

3. Was the evidence sufficient to support a finding of guilt beyond a reasonable doubt and not based upon speculation and conjecture?

This is not an appeal from the judgment but from an order denying a motion for a new trial upon the same ground as the issues set forth above. The standard for appellate review of an order denying a new trial is somewhat different than a review of a judgment. Here the standard is that there must be a clear showing of an abuse of discretion to obtain a reversal. [1]

During the course of trial, a police officer, Sgt. Clover, testified on behalf of the state. He had been one of the original investigating officers and had prepared four pages of written notes. Preparatory to testifying he had re-read these notes to refresh his recollection. Counsel for the defendant demanded these notes be produced for his examination. The state produced only two of the four pages and the remaining two pages were inspected in camera by the judge. The trial court sustained the state's objection to defense counsel's demand to examine the additional two pages.

In ruling on the motion the court stated:

". . . There is nothing in those pages bearing directly on the issues, although some casual references to things already referred to, again, not going to the allegation itself. There is much by way of gossip and rumor. The officer has not testified as to any of those items which are material to the case—strike that—the officer has

---

[1] *State v. Simmons* (1973), 57 Wis. 2d 285, 290, 203 N. W. 2d 887; *White v. State* (1970), 45 Wis. 2d 672, 681, 173 N. W. 2d 649.

testified to items material to the case on the first two pages, but there is nothing on the third and fourth pages which would relate to his testimony, and I think the only reason that the defense is given an opportunity to see these notes is because of the fact that the officer made reference to the fact that he had checked his notes this morning before coming to court, and the defense therefore has a right to look at those notes to determine whether or not the testimony conformed to what the notes indicated, and there is nothing on pages three and four which are material to that testimony, and what items are there, as I indicated previously, are clearly based on rumor and hearsay, . . ."

The defendant claims that sec. 971.24 (1), Stats., requires the reports be produced to the defendant at the time of trial. Sec. 971.24 (1), states:

"At the trial before a witness other than the defendant testifies, written or phonographically recorded statements of the witness, if any, shall be given to the other party in the absence of the jury. For cause, the court may order the production of such statements prior to trial."

However, the defendant neglected to note that sec. 971.24 (2), Stats., provides:

"Either party may move for an in camera inspection by the court of the documents referred to in sub. (1) for the purpose of masking or deleting any material which is not relevant to the case being tried. The court shall mask or delete any irrelevant material."

It is obvious that upon request of the prosecution the trial court made an in-camera inspection of the two pages in question and found those two pages to be irrelevant material and deleted them. The failure to produce those two pages was neither prejudicial nor a denial of due process.

The defendant contends that because he was not permitted to see or examine the withheld two pages he is left with no effective means to challenge the trial court's

ruling that the information on those two pages was material or a proper basis for cross-examination of not only the police officer but the state's witness, Mrs. O'Leary.

We suggest as a proper procedure, upon motion by the defendant, that material which is masked or deleted from a discovery document after an in-camera inspection be placed in a sealed envelope or container, if necessary, so that it may be preserved for the aid of this court upon appellate review.

The defendant contends the trial court's refusal to instruct the jury regarding a bomb scare and the trial court's refusal to allow the jury to reach a verdict of a bomb scare in violation of sec. 947.015, Stats., was prejudicial error.

The defendant claims "a bomb scare" in violation of sec. 947.015, Stats., is a lesser included offense of "endangering safety by conduct regardless of life" in violation of sec. 941.30.

Sec. 939.66, Stats., states that:

"**Conviction of included crime permitted.** . . . An included crime may be any of the following:

" (1) A crime which does not require proof of any fact in addition to those which must be proved for the crime charged; or

" (2) A crime which is a less serious type of criminal homicide than the one charged; or

" (3) A crime which is the same as the crime charged except that it requires recklessness or negligence while the crime charged requires a criminal intent; or

" (4) An attempt in violation of s. 939.32 to commit the crime charged; or

" (5) The crime of attempted battery when the crime charged is rape, robbery, mayhem or aggravated battery or an attempt to commit any of them."

It is clear that sub. (1) of sec. 939.66, Stats., is the only one which might apply to this situation.

The statutory definitions of the two crimes are as follows:

"941.30 **Endangering safety by conduct regardless of life.** Whoever endangers another's safety by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, may be fined not more than $1,000 or imprisoned not more than 5 years or both."

"947.015 **Bomb scares.** Whoever intentionally conveys or causes to be conveyed any threat or false information, knowing such to be false, concerning an attempt or alleged attempt being made or to be made to destroy any property by the means of explosives shall be fined not more than $1,000 or imprisoned not more than one year in the county jail or both."

It is apparent from a comparison of the two statutes that sec. 947.015, Stats., is not an included crime in sec. 941.30 because it does require proof of additional facts, namely, the conveyance of a false bomb threat and knowledge that it is false. The state would be required to prove under sec. 941.30 that the "bomb" was imminently dangerous and under sec. 947.015 that the "bomb" was false or inoperable. The two elements of the crimes are mutually exclusive and not inclusive as the defendant argues. Further, sec. 947.015 is referenced to destruction of property whereas sec. 941.30 is referenced to endangering the safety or life of a person. There was no error in the trial court's refusal to instruct the jury regarding a bomb scare and since there was no error there can be no prejudice.

The defendant contends there was not sufficient evidence to support the conviction and the jury's finding was based upon speculation and conjecture.

" 'Several rules applied in appellate review of the sufficiency of the evidence in criminal cases have been stated so frequently in our late cases that they need no citation of authority to support them. The burden of proof is upon the state to prove every essential element of the crime charged beyond reasonable doubt. The test is not whether this court or any of the members thereof are

convinced beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true. A criminal conviction can stand based in whole or in part upon circumstantial evidence. The credibility of the witnesses and the weight of the evidence is for the trier of fact. In reviewing the evidence to challenge a finding of fact, we view the evidence in the light most favorable to the finding. Reasonable inferences drawn from the evidence can support a finding of fact and, if more than one reasonable inference can be drawn from the evidence, the inference which supports the finding is the one that must be adopted. Our review of the record in response to a challenge to the sufficiency of the evidence is so limited by these rules.' " *Taylor v. State* (1972), 55 Wis. 2d 168, 176, 197 N. W. 2d 805.

The defendant claims that he did not intend the bomb to explode and because it did not explode the only logical and reasonable explanation is that he constructed the bomb so that it would not explode. As stated in his reply brief, the appellant conceded that:

"The state is correct in its assertion that it is not absolutely necessary that it prove why the device did not explode. However, it is necessary that the state prove that the device had the capacity to produce the explosion."

Mr. Maynard J. Pro, who is an explosions expert from the internal revenue service, testified on behalf of the state that the device in question would explode.

At the trial the defendant testified as follows:

"*Q.* Now, you have indicated, Mr. Van Ark, that you intended to scare Mr. O'Leary, is that correct?
"*A.* Yes, I did.
"*Q.* And can you indicate to the ladies and gentlemen of the jury, if it was your intention to scare Mr. O'Leary, why you used a fully charged 9-volt battery in this device?
"*A.* Well, I had started out with the intention of blowing the car up and accomplishing the whole thing without taking any piece off, and then I thought, well, it was a

pretty stupid thing to do to just go around blowing people up, so the whole device was constructed and I took the shell apart and took the filament out and put the bulb back in.

"*Q.* Now, Mr. O'Leary—I'm sorry, Mr. Van Ark—if you intended to merely scare Mr. O'Leary why didn't you also remove the gun powder?

"*A.* I just didn't think of it at the time.

"*Q.* Now, this statement that Mr. Kuehne has referred to and which is marked State's Exhibit No. 20, does that statement, in fact, have your signature at the top of the first page and the bottom of the last page?

"*A.* Yes, it does."

The defendant in this signed statement stated:

". . . I taped the electrical switch which is police exh. #3 to the right rear spring of O'Leary's 59' Olds Brown over White. This car has a blue hood. I next put the shot gun shell attached to the green wire in the nozzel of the gas . . . tank. I also put in the nozzel a length of bare copper wire soldered to 3 flash bulb ends. When I connected the proper wires to the battery and switch so when the switch was turned on the current would set off the gun powder then setting fire to the gas in the gas tank. To turn this switch on I connected a length of bare copper wire to the eye bolt on the switch and over to the valve of the right rear tire. I figured when Jim O'Leary would move his car the wheel would turn pulling the wire and turning on the switch. I had this all planned out and this was supposed to set the bomb off."

Also at the trial, Rosemary O'Leary testified:

"*Q.* Did Mr. Van Ark ever indicate to you any threats against the life of your husband?

"*A.* No.

"*Q.* Did Mr. Van Ark around the date of August 17th, 1971 indicate to you that your situation would be changed?

". . .

"*A.* Previously to that, yes.

"*Q.* Would you indicate to the jury, when you say 'previously to that,' with as much accuracy as you can, what time you're talking about?

"*A.* Sometime I would say in July.

"*Q.* And would you indicate to the jury what Mr. Van Ark told you?

"*A.* He said that by the time his vacation rolled around the kids and I would be able to go with him.

"*Q.* And, Mrs. O'Leary, when, if you have knowledge, was Mr. Van Ark's vacation supposed to begin?

"*A.* A week after the bomb was set."

The defendant claimed that the device would not and did not go off because he removed the cross wires from the flashbulb. Sgt. Rice, however, testified that when he observed the device the cross wire was present. The cross wire was not present at the time of trial but that could be explained by the fact that a number of people had handled the exhibit in the intervening period. The issue became one of credibility.

"Since the law cannot enter the subjective mind of an individual accused, intent must be evidenced by inferences from the words and conduct of the actor and the circumstances surrounding the act. *State v. Wells* (1971), 51 Wis. 2d 477, 187 N. W. 2d 328; *State v. Vinson* (1955), 269 Wis. 305, 68 N. W. 2d 712, 70 N. W. 2d 1. The general rule is that an accused is presumed to intend the natural and probable consequences of his acts, voluntarily and knowingly performed, *Hawpetoss v. State* (1971), 52 Wis. 2d 71, 187 N. W. 2d 823; *Zebrowski v. State* (1971), 50 Wis. 2d 715, 185 N. W. 2d 545, although evidence of a contrary intention may rebut the presumption. *Gelhaar v. State* (1969), 41 Wis. 2d 230, 163 N. W. 2d 609; *Greer v. State* (1968), 40 Wis. 2d 72, 161 N. W. 2d 255; *State v. Wells, supra.* . . ." *State v. Schenk* (1972), 53 Wis. 2d 327, 332, 193 N. W. 2d 26.

From the testimony of Rosemary O'Leary and the testimony of the defendant himself and his written statement, the jury could conclude beyond reasonable doubt that the defendant intended the bomb to explode. The evidence is sufficient to sustain the conviction.

The defendant also argues in support of his claim that evidence was insufficient that the trial court erred prejudicially in refusing to allow him to make an offer of proof by way of demonstration that the bomb, as it

appeared in the courtroom, would not explode in order to challenge the credibility of the expert witness. We have examined the record and conclude the trial court did not err nor abuse its discretion in refusing to permit the offer of proof by way of demonstration.

In any event, this issue is not properly before the court on this review of an order denying the motion for a a new trial.

In *State v. Simmons*,[2] *supra*, at pages 290, 291, we stated:

". . . The moving party in a motion for new trial has the obligation to raise the issues which trigger the court's discretion. It is not sufficient to merely assert that an error has occurred in the trial or that a verdict is contrary to the evidence or the law. An appeal from the denial of a motion for a new trial does not raise in this court all of the issues that would be available to an appellant were there a direct appeal from the conviction. The appeal from a denial of a motion for a new trial can only raise those questions which, with particularity, were directed to the trial court's attention in the motion or in an evidentiary hearing held upon the motion. Since we review the discretion of the trial judge, matters not brought to his attention in the proceedings on the motion for a new trial are not before us upon an appeal from the ensuing order.

"The record fails to include any transcript of any argument made by defendant's counsel in support of his motion for a new trial. One moving for a new trial has the obligation to include in his motion allegations, prima facie at least, to show reasons for a new trial. It is not sufficient to make assertions of a general nature. . . ."

Here, the record reveals only the general allegation in the motion that the jury's finding "was based upon speculation and conjecture" and has no transcript of the argument.

We conclude the trial court did not abuse its discretion in denying the motion for a new trial.

*By the Court.*—Order affirmed.

---

[2] Footnote 1.