NELSON, Plaintiff in error, v. STATE, Defendant in error.

*No. State 123. Argued June 6, 1973.—Decided June 29, 1973.*
(Also reported in 208 N. W. 2d 410.)

For the plaintiff in error there were briefs by *Jack F. Olson* and *Denis P. Bartell,* attorneys, and *Ross, Stevens, Pick & Ross* of counsel, all of Madison, and oral argument by *Mr. Bartell.*

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

CONNOR T. HANSEN, J.   Defendant and Thomas William Schmitt spent the evening of January 19, 1971, together in Madison, Wisconsin. At approximately 2 a. m. the following morning, defendant was a passenger in a car driven by Schmitt in a southerly direction on Park Street when someone from another car traveling in the

same direction made a gesture with a bottle. The two cars turned off Park Street onto Fish Hatchery Road and continued south. Eventually, Schmitt slowed his vehicle and came to a stop in the southbound lane of traffic. The other car stopped immediately behind the Schmitt car.

Defendant took two pistols from the glove compartment, passed one to Schmitt, and kept the other. Schmitt and the defendant got out of the car and proceeded to the rear in the direction of the other car.

Three men, Lynn Poole, William Norman Noll and Richard J. Brettingen, got out of the second car and approached Schmitt's car. The three had spent the evening together drinking. Some discussion ensued before Schmitt fired some shots into the air. Poole and Noll turned and ran. More shots were fired by both Schmitt and the defendant. Brettingen was fatally struck by four bullets.

The autopsy revealed that the victim received wounds which entered the stomach, breastbone, front-side of the neck and the mid-portion of the back. Although the neck wound would have caused the victim's death within a matter of minutes without immediate medical attention, the back wound was identified as the fatal wound.

The pistol used by the defendant was recovered from a field between Janesville and Milton, Wisconsin, where the defendant had thrown it. At trial, the state's expert, James Beck, testified that one bullet, the shot in the stomach, could positively be identified as having been fired from defendant's pistol, but that the other three could not be identified with, or excluded from, Nelson's gun. Charles M. Wilson, an expert with the Wisconsin State Crime Laboratory for more than twenty years, testified that two bullets, including the one which entered the victim's back definitely were not fired from defendant's pistol. He agreed that the bullet recovered

from the victim's stomach wound was fired from defendant's pistol and that the other bullet could not be identified with or excluded from defendant's pistol.

Both Schmitt and the defendant were initially charged with first-degree murder. A bargain, however, was made between the district attorney and Schmitt. In exchange for Schmitt's agreement to testify on behalf of the state at defendant's trial, the charge against Schmitt was reduced to reckless use of a weapon, to which he pleaded guilty and was sentenced to six months in jail.

The sole issue on this appeal is whether the defendant was denied a fair trial because of the suppression of evidence favorable to the defendant at trial by the state.

The state has the affirmative duty to disclose to the defendant or his counsel any material or information within its possession or control which tends to negate the guilt of the defendant or would tend to reduce his punishment therefor.[5] In *Brady v. Maryland* (1963), 373 U. S. 83, 87, 88, 83 Sup. Ct. 1194, 10 L. Ed. 2d 215, the United States Supreme Court stated:

"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

". . . A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, even though, as in the present case, his action is not 'the result of guile,' to use the words of the Court of Appeals. 226 Md., at 427, 174 A. 2d, at 169."

[5] *See: Lampkins v. State* (1971), 51 Wis. 2d 564, 575, 187 N. W. 2d 164; *State v. Cole* (1971), 50 Wis. 2d 449, 184 N. W. 2d 75; *State v. Miller* (1967), 35 Wis. 2d 454, 151 N. W. 2d 157.

The exculpatory evidence alleged to have been suppressed by the state consists of knowledge on the part of the district attorney's office of a statement made by Schmitt to one Robert K. Adams. According to the sworn statement of Adams, he was a fellow inmate of Schmitt at Green Bay state reformatory in 1965 and became acquainted with him at that time. April 21, 1971, three months after the shooting, Adams had a conversation with Schmitt in which the shooting of Brettingen was mentioned and in which Schmitt admitted having shot Brettingen twice. Adams stated that Schmitt said to him "I shot him [Brettingen] dead in the back." In April, 1971, Adams related this conversation to detective Robert Compton of the Dane county sheriff's department, and suggested that he would testify against Schmitt in the hope that such testimony would assist Adams' brother in gaining a reduction in the sentence he was then serving. Neither the district attorney's office nor any other law enforcement agency subsequently contacted Adams.

An affidavit signed by Detective Compton states that he had had many dealings with Adams in the past concerning investigations of criminal activity in Dane county and believed Adams to be reliable. Compton stated that he was told by Adams that Schmitt had admitted shooting Brettingen twice in the back while Brettingen was lying on the ground. Compton's statement further indicates that prior to defendant's trial, Compton, on several occasions, discussed this admission of Schmitt with deputy district attorney Robert De Chambeau.

Schmitt's alleged statement to Adams was in direct conflict to Schmitt's testimony at trial. At trial, Schmitt testified that he never fired in the direction of Brettingen either intentionally or otherwise.

Prior to trial, Schmitt and the defendant were both facing prosecution upon charges of first-degree murder.

Schmitt's testimony, like that of every accomplice, is suspect. Under these circumstances, courts have considered themselves under a special obligation to examine the asserted errors in the conduct of the trial to insure that a miscarriage of justice does not occur.[6] Schmitt was the state's sole witness to the actual shooting. Noll and Poole testified that upon hearing the first shots they turned and ran, and could not see who fired the shots or in what direction they were fired. The testimony of Adams would have contradicted that of witness Schmitt. The credibility of Schmitt would thus be at issue.

While the duty of the state to disclose exculpatory evidence has not been constitutionally extended to require full disclosure of all evidence helpful to the accused,[7] there is precedent for the proposition that evidence, material on the issue of accused's guilt or innocence, should be disclosed to the accused even though it goes only to the credibility of a witness.[8]

However, the exculpatory nature of Schmitt's statement to Adams need not depend solely upon its effects on Schmitt's credibility. The information, filed March

[6] *United States v. Hibler* (9th Cir. 1972), 463 Fed. 2d 455, 459.

[7] *Britton v. State* (1969), 44 Wis. 2d 109, 117, 170 N. W. 2d 785; *Moore v. Illinois* (1972), 408 U. S. 786, 92 Sup. Ct. 2562, 33 L. Ed. 2d 706; *Williams v. Wolff* (D. C. Neb. 1972), 339 Fed. Supp. 631, 639.

[8] *Giglio v. United States* (1972), 405 U. S. 150, 154, 92 Sup. Ct. 763, 31 L. Ed. 2d 104; *United States v. Hibler* (9th Cir. 1972), 463 Fed. 2d 455, 460; *Loraine v. United States* (9th Cir. 1968), 396 Fed. 2d 335, 339, certiorari denied, 393 U. S. 933, 89 Sup. Ct. 292, 21 L. Ed. 2d 270; *Simos v. Gray* (E. D. Wis. 1973), 356 Fed. Supp. 265.

*See also: Napue v. Illinois* (1959), 360 U. S. 264, 79 Sup. Ct. 1173, 3 L. Ed. 2d 1217; *Alcorta v. Texas* (1957), 355 U. S. 28, 78 Sup. Ct. 103, 2 L. Ed. 2d 9. *See: Williams v. Florida* (1970), 399 U. S. 78, 82, 90 Sup. Ct. 1893, 26 L. Ed. 2d 446; and *Jackson v. Wainwright* (5th Cir. 1968), 390 Fed. 2d 288, 294.

12, 1971, charged that the defendant "did feloniously and with intent to kill, murder Richard J. Brettingen, a human being . . . contrary to section 940.01 of the statutes . . ." Sec. 940.01 (1), Stats., provides:

". . . (1) Whoever causes the death of another human being with intent to kill that person or another shall be sentenced to life imprisonment."

Before defendant could be found guilty of first-degree murder, the state carried the burden of showing beyond a reasonable doubt that the defendant *caused* the death of Brettingen. The autopsy report indicated that Brettingen's death was caused by the bullet wound in the back. Schmitt's admission that he shot the victim in the back would not just impeach Schmitt's credibility as a witness but would go directly to the issue of defendant's guilt or innocence on the murder charge. The evidence was exculpatory in nature, and its suppression by the state violated the due process clause of the fourteenth amendment.

The purpose of trial is as much the acquittal of the innocent as it is the conviction of the guilty. Although the prosecutor acts within the adversary system, there is ample room in that system, at least as far as "due process" is concerned, to require the state to disclose exculpatory evidence to the accused.[9] The United States

---

[9] The American Bar Association Project on Minimum Standards for Criminal Justice, *Discovery and Procedure Before Trial*, sec. 2.1 (c), provides:

"(c) Except as is otherwise provided as to protective orders (section 4.4), the prosecuting attorney shall disclose to defense counsel any material or information within his possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefor."

The American Bar Association Project on Standards for Criminal Justice, *The Prosecution Function and The Defense Function*, sec. 1.1, in part, provides:

Supreme Court, in *Berger v. United States* (1935), 295 U. S. 78, 88, 55 Sup. Ct. 629, 79 L. Ed. 1314, discussed the role of the prosecuting attorney in the following manner:

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not

"(a) The office of prosecutor is an agency of the executive branch of government which is charged with the duty to see that the laws are faithfully executed and enforced in order to maintain the rule of law.

"(b) The prosecutor is both an administrator of justice and an advocate; he must exercise sound discretion in the performance of his functions.

"(c) The duty of the prosecutor is to seek justice, not merely to convict."

The commentary to this section provides:

"Although the prosecutor operates within the adversary system, it is fundamental that his obligation is to protect the innocent as well as to convict the guilty, to guard the rights of the accused as well as to enforce the rights of the public. ABA CODE EC 7–13."

Sec. 3.11 provides:

"**Disclosure of evidence by the prosecutor.**

"(a) It is unprofessional conduct for a prosecutor to fail to disclose to the defense at the earliest feasible opportunity evidence which would tend to negate the guilt of the accused or mitigate the degree of the offense or reduce the punishment.

"(b) The prosecutor should comply in good faith with discovery procedures under the applicable law.

"(c) It is unprofessional conduct for a prosecutor intentionally to avoid pursuit of evidence because he believes it will damage the prosecution's case or aid the accused."

at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

Deputy district attorney De Chambeau, in his affidavit, states that the reason he failed to disclose the information to the defendant or his counsel was that he did not believe Adams to be reliable. This is of no consequence. Nondisclosure by the state's prosecutor cannot be justified by self-serving judgments as to the information's utility to the defense.[10] The court, in *Barbee v. Warden, Maryland Penitentiary* (4th Cir. 1964), 331 Fed. 2d 842, 845, quoting *Griffin v. United States* (1950), 87 U. S. App. D. C. 172, 183 Fed. 2d 990, 993, stated:

> " '[T]he case emphasizes the necessity of disclosure by the prosecution of evidence that may reasonably be considered admissible and useful to the defense. When there is substantial room for doubt, the prosecution is not to decide for the court what is admissible or for the defense what is useful.' "

The state contends that it owes no duty to disclose exculpatory evidence absent a specific request therefor by the accused. The state asserts that the defendant failed to request the production of Adams' statement.

A number of cases have discussed the responsibility of the state in respect to coming forward with exculpatory evidence within its exclusive control and the necessity of a prior request therefor. The court, in *Brady v. Maryland, supra,* at page 87, stated "that the suppression by the prosecution of evidence favorable to an accused *upon request* violates due process where the evidence is material either to guilt or to punishment . . . ." (Emphasis supplied.) Despite this language a number of federal jurisdictions have sub-

[10] *United States v. Bonanno* (2d Cir. 1970), 430 Fed. 2d 1060, 1063.

sequently held that a specific request is not, in all cases, an indispensable prerequisite.[11]

However, the United States Supreme Court, in *Moore v. Illinois, supra,* reaffirmed the necessity of a request by the defense. At page 794, the court stated:

"The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence. These are the standards by which the prosecution's conduct in Moore's case is to be measured."[12]

Prior to trial the defendant made numerous discovery motions under secs. 971.23 and 971.24, Stats. In addition, the defendant moved the trial court for an order directing the state to produce all of its records and files in connection with this case so that the trial court could conduct an independent in-camera examination of state's file to determine whether or not the state was withholding any exculpatory evidence. The court granted defendant's motion and ordered that the state furnish the file to the court. Whether the state withheld Adams' statement from the trial court or the trial court did not consider the statement to be exculpatory, is irrelevant. The very fact that defendant made his motion

[11] *United States v. Wilkins* (2d Cir. 1964), 326 Fed. 2d 135; *United States v. Baldi* (3d Cir. 1952), 195 Fed. 2d 815, certiorari denied, 345 U. S. 904, 73 Sup. Ct. 639, 97 L. Ed. 1341; *Barbee v. Warden, Maryland Penitentiary, supra; Clarke v. Burke* (7th Cir. 1971), 440 Fed. 2d 853; *United States v. Poole* (7th Cir. 1967), 379 Fed. 2d 645; *Lee v. United States* (9th Cir. 1968), 388 Fed. 2d 737; *United States v. Wolfson* (D. C. Del. 1971), 322 Fed. Supp. 798.

[12] This court has previously determined that a defense demand is required. *See: State v. Cole, supra.*

placed the prosecution on notice that the defense wished to see all exculpatory evidence. Defendant's motion constitutes sufficient request for the evidence in question.

The state's suppression of Adams' statement was in contravention of the due process clause of the fourteenth amendment of the United States Constitution, however, a new trial is not automatically mandated thereby. The court, in *Giglio v. United States, supra,* at page 154, stated:

". . . . We do not, however, automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense, but not likely to have changed the verdict . . . .' *United States v. Keogh,* 391 F. 2d 138, 148 (CA 2 1968). A finding of materiality of the evidence is required under *Brady, supra,* at 87. A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . .' *Napue, supra,* at 271."

In the instant case, the defendant was not convicted of first-degree murder but attempted first-degree murder. It was undisputed at trial that the defendant had fired several shots at the victim and that at least one had struck the victim in his stomach. Whether it could be shown that someone else had also shot the victim and that the victim had died as a result of the wound, is immaterial to the conviction for attempted first-degree murder. Where the disclosure to defense of suppressed evidence would not have altered the result, a new trial is not required. *Giglio v. United States, supra.*

While the suppressed evidence would have been of no legal consequence upon defendant's conviction for attempted murder, the defendant, nonetheless, argues that the jury may have ignored the law in arriving at its verdict, and may have returned a verdict more favorable to the defendant if the evidence had been submitted to them. While defendant may have been denied the

"sporting chance" that the jury would have ignored the law, this cannot be presumed and this court will not confer upon this possibility the dignity of a constitutional right. *Brady v. Maryland, supra,* at page 90.

Defendant further argues that had this information been available to the trial court at sentencing the defendant would have received a more favorable sentence and that the defendant is thereby prejudiced by its absence. In its ruling on motions after verdict, the trial court, noting that defendant had received a twelve-year sentence which was eighteen years short of the maximum that could have been imposed, was of the opinion that, in light of defendant's conduct, the sentence would not have been different. We find no abuse of discretion in such a finding by the trial court.

While the state committed constitutional error in the suppression of exculpatory evidence, such error did not constitute prejudicial error or require a new trial in the interest of justice. This is not a case wherein the serious misconduct of the prosecutor necessitates a new trial, even in the absence of a showing of prejudice, in order to sustain the integrity of the judicial process.[13] A conviction obtained by means of a fair trial will not be overturned and a new trial granted to punish society for the nonprejudicial misconduct of the prosecutor. *Brady v. Maryland, supra,* at page 83.

*By the Court.*—Judgment and order affirmed.

[13] *Kyle v. United States* (2d Cir. 1961), 297 Fed. 2d 507. *See also:* Judge BURGER's dissenting opinion in *Levin v. Katzenbach* (D. C. Cir. 1966), 363 Fed. 2d 287.