STATE, Appellant, v. CALHOUN, Respondent.

*No. State 163. Argued February 5, 1975.—Decided March 6, 1975.*
(Also reported in 226 N. W. 2d 504.)

WILKIE, C. J., and HEFFERNAN, J., dissent.

For the appellant the cause was argued by *E. Michael McCann,* Milwaukee county district attorney, and *Stephen Jacobs,* assistant district attorney, with whom on the brief was *Robert W. Warren,* attorney general.

For the respondent there was a brief by *James M. Shellow, David P. Jenkins* and *Shellow & Shellow,* all of Milwaukee, and oral argument by *James M. Shellow.*

ROBERT W. HANSEN, J. While the appeal is from the judgment holding that this defendant cannot be retried, the challenge is to the exercise of discretion by the trial court in granting defendant's motion for mistrial and directing that defendant be retried. In reviewing the facts and circumstances surrounding the trial court's granting of defendant's motion for mistrial, we deal (1) with the consequences of a less than complete compliance with a demand for disclosure under Wisconsin law, and (2) with the applicability of double jeopardy provisions of the state [1] and federal [2] constitutions, as controlled and determined by the decisions of the United States Supreme Court as to mistrial with retrial.

---

[1] Art. I, sec. 8, Wisconsin Constitution, providing in material part: ". . . and no person for the same offense shall be put twice in jeopardy of punishment . . . ."

[2] Art. V, Amendments to the United States Constitution, providing in material part: ". . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ."

*Trial court's declaring a mistrial.*

Where the claim is one of double jeopardy under a mistrial with retrial order, the United States Supreme Court has held that such cases ". . . turn on the particular facts and thus escape meaningful categorization . . . ." [3] The high court makes clear that inquiry as to the facts includes determining whether ". . . in light of the State's established rules of criminal procedure, the trial judge's declaration of a mistrial was not an abuse of discretion. . . ." [4] This is particularly so in cases, as the one now before us, in which a mistrial has been declared prior to verdict. [5]

Three possibilities exist as to the propriety and consequences of the trial court here granting defendant's motion for a mistrial. The first, urged by the defendant, is that the trial court acted properly in doing what it did, but did not go far enough. Having declared a mistrial, the trial court was here required to accompany the granting of defendant's motion with an order dismissing the charges. The second possibility, urged by the state on appeal, is that the trial court was entitled to declare

[3] *Illinois v. Somerville* (1973), 410 U. S. 458, 464, 93 Sup. Ct. 1066, 35 L. Ed. 2d 425.

[4] *Id.* at page 468, the high court, at pages 462, 463, stating: "In reviewing the propriety of the trial judge's exercise of his discretion, this Court . . . has scrutinized the action to determine whether, in the context of that particular trial, the declaration of a mistrial was dictated by 'manifest necessity' or the 'ends of public justice.' . . ."

[5] *Id.* at pages 467, 468, the high court stating: ". . . But in cases in which a mistrial has been declared prior to verdict, the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial. That, indeed, was precisely the rationale of *Perez* [*United States v. Perez* (1824), 22 U. S. (9 Wheat.) 579, 6 L. Ed. 165] and subsequent cases. Only if jeopardy has attached is a court called upon to determine whether the declaration of a mistrial was required by 'manifest necessity' or the 'ends of public justice.' "

a mistrial with retrial, and that the judge to whom the case was assigned went too far in finding retrial barred by a double jeopardization. The third possibility, suggested by the state's brief on appeal, is that the trial court went too far and that a mistrial should not have been declared on the ground and record before the trial court. Making an independent review of the facts and circumstances, we consider all three possibilities.

Four days before the trial began, defense counsel served on the district attorney's office a demand for disclosure of any evidence in the possession of the state ". . . tending to exculpate the defendant of the commission of this offense, or to minimize his complicity in it." At the time of the demand, the district attorney assigned to the case had in his possession police notes or summaries regarding: (1) A statement by Ronald Calhoun, son of the defendant, that the victim had reached into his pocket and pulled out a gun immediately before the fatal shooting; and (2) a statement by John Calhoun, also a son of the defendant, to the same effect; and (3) a statement by Rose Wesley, niece or cousin or friend of defendant, that she saw the victim reach into his pocket prior to being shot by the defendant. With self-defense claimed, these statements were exculpatory in nature. In his affidavit in support of the state's motion to vacate the dismissal, the assistant prosecutor stated that, acting in good faith, he did not furnish these statements to the defense believing that the statements of the two sons and the niece were available to the defendant and that they would say to their father or uncle no less than they said to the police on his behalf. It was the prosecutor's interpretation of the law in this state that he was not required to furnish exculpatory information to the defendant that was not in the exclusive possession of the state and was equally available to the defense.

On the issue of whether a demand for disclosure reaches exculpatory material that is not in the exclusive possession of the state, the trial court did not refer to Wisconsin's discovery and inspection statute.[6] The notice of demand served by the defendant did not refer to such statute, and the demand appears to go beyond what is to be disclosed under the statute.[7] Prior to enactment of the statute, this court distinguished between "discovery" and "disclosure."[8] As to both, it has not been held that the legislature did not codify and implement

---

[6] Sec. 971.23, Stats.

[7] *Id.* providing that: "(1) . . . Upon demand, the district attorney shall permit the defendant . . . to inspect and copy or photograph any written or recorded statement concerning the alleged crime *made by the defendant* . . . furnish the defendant with a written summary of all oral statements *of the defendant* which he plans to use in the course of the trial. The names of witnesses to the written and oral statements which the state plans to use in the court of the trial shall also be furnished.

"(2) . . . Upon demand prior to trial . . . furnish the defendant a copy of his criminal record . . . .

"(3) . . . (a) A defendant may, not less than 15 days nor more than 30 days before trial, serve . . . an offer in writing to furnish the state a list of all witnesses the defendant intends to call at the trial, whereupon . . . the district attorney shall furnish the defendant a list of all witnesses and their addresses whom he intends to call at the trial. . . .

"(4) . . . all parties shall produce at a reasonable time and place designated by the court all physical evidence which each party intends to introduce in evidence. . . .

"(7) . . . If, subsequent to compliance with a requirement of this section, and prior to or during trial, a party discovers additional material or the names of additional witnesses requested *which are subject to discovery, inspection or production hereunder,* he shall promptly notify the other party of the existence of the additional material or names. . . ." (Emphasis supplied.)

[8] *Britton v. State* (1969), 44 Wis. 2d 109, 117, 118, 170 N. W. 2d 785.

by the statute the full mandate of *Nelson v. State*,[9] which in turn followed the mandate of the United States Supreme Court in *Brady v. Maryland*.[10] We do not here reach or rule on whether the statute controls as to both "discovery" and "disclosure." However, we would not label as "prosecutorial misconduct" a conclusion of law by an assistant district attorney that the discovery statute was applicable and did not require the furnishing, on demand, of exculpatory material not in the exclusive possession of the state and not relating to statements made by the defendant.[11]

As to whether exculpatory material, not in the exclusive possession of the state, must be turned over on demand for disclosure, the applicability of the state discovery statute would make no difference. Under that statute, in regard to its witness list exchange requirement, in *Irby v. State*,[12] this court stated the rule to be that, even to secure a recess or continuance for failure to comply with the statute, it is to be established that

---

[9] *Nelson v. State* (1973), 59 Wis. 2d 474, 479, 208 N. W. 2d 410, this court holding: "The state has the affirmative duty to disclose to the defendant or his counsel any material or information within its possession or control which tends to negate the guilt of the defendant or would tend to reduce his punishment therefor. . . ."

[10] *Brady v. Maryland* (1963), 373 U. S. 83, 87, 88, 83 Sup. Ct. 1194, 10 L. Ed. 2d 215, the high court holding: "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

". . . A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding. . . ."

[11] *See:* Sec. 971.23, Stats., *supra*, footnote 7.

[12] (1973), 60 Wis. 2d 311, 210 N. W. 2d 755.

". . . the defendant be surprised and prejudiced by the testimony. . . ." [13] Prior to the enactment of the discovery statute, applying the *Brady v. Maryland* mandate, this court in *State v. Cole*,[14] dealing with a prosecutorial failure to disclose information concerning a gun and the kind of car involved in an arrest, found no error in the failure to disclose and stated: "Certainly defendant was aware of the kind of car and gun involved in her arrest. Therefore, this information was not 'in the exclusive possession of the state.' " [15] At the constitutional level, the exclusive possession prerequisite to the duty to disclose was thus recognized. In *Nelson* itself, this court discussed cases dealing with ". . . the responsibility of the state in respect to coming forward with *exculpatory evidence within its exclusive control* and the necessity of a prior request therefor. . . ." (Emphasis supplied.) [16] Also, in *Nelson,* we held that ". . . the duty of the state to disclose exculpatory evidence has not been constitutionally extended to require full disclosure of all evidence helpful to the accused . . . ."[17] In support of the holding, we cited, and later in the opinion quoted from, *Giglio*

---

[13] *Id.* at page 322.

[14] (1971), 50 Wis. 2d 449, 184 N. W. 2d 75.

[15] *Id.* at page 457, quoting *Giles v. Maryland* (1967), 386 U. S. 66, 87 Sup. Ct. 793, 17 L. Ed. 2d 737. *See also: Mikulovsky v. State* (1972), 54 Wis. 2d 699, 722, 196 N. W. 2d 748, as to claimed duty of district attorney to disclose to defense counsel, prior to enactment of the discovery statute, the recorded confession of the defendant, this court finding no error and holding: ". . . However, it appears that defense counsel was fully aware of the confession and its contents prior to the hearing, as evidenced by references thereto in the various affidavits submitted to the trial court. . . ."

[16] *Nelson v. State, supra,* footnote 9, at page 484.

[17] *Id.* at page 481, this court also stating: ". . . there is precedent for the proposition that evidence, material on the issue of accused's guilt or innocence, should be disclosed to the accused even though it goes only to the credibility of a witness." *See also: Britton v. State, supra,* footnote 8, at page 118, holding:

*v. United States,*[18] the United States Supreme Court holding that: ". . . We do not, however, automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense, but not likely to have changed the verdict . . . .' " [19] Under these holdings, we hold that it was not error for the assistant district attorney to conclude that the duty to disclose upon demand did not include, on statutory or constitutional grounds, the furnishing of exculpatory material not in the exclusive possession of the state.

As to the factual issue of whether the information not here disclosed was or was not in the exclusive possession of the state, we turn to the record. That does not take long for there is very nearly no record at all on the issue presented. What there is limits itself to an announcement, a motion and a statement by defense counsel. Prior to taking the testimony of the state's last witness, during a recess, defense counsel announced that he had learned of a matter ". . . which prompts a motion." He requested and received court permission to make the motion after the state's case was completed. Defense counsel then stated that he had learned that three summaries of statements made by witnesses to the police had not been furnished by the state to the defense, and made defendant's motion for mistrial. He alleged that the statements were exculpatory in nature and that he could not obtain the information in any other way. The

". . . it is clear the United States Supreme Court has not yet extended disclosure, as a constitutional right, to the degree claimed by the defendant." (The defendant claiming that ". . . the constitution requires full disclosure of the helpful information . . . .")

[18] (1972), 405 U. S. 150, 92 Sup. Ct. 763, 31 L. Ed. 2d 104.

[19] *Id.* at page 154, quoting *United States v. Keogh* (2d Cir. 1968), 391 Fed. 2d 138, 148.

trial court examined the statements, found them to contain exculpatory material and granted the motion for mistrial.

No supporting affidavit was offered and no testimony was taken as to the manner or circumstances under which the defense learned of the information in the police summaries containing statements made by the two sons and the niece or cousin or friend of the defendant. No inquiry was made as to whether, prior to trial, the sons or niece had told defendant or his counsel what they told the police following the fatal shooting. This record does not satisfactorily exclude the possibility that the sons and niece had not furnished to the defendant, not only the same information given to the police as to what happened, but also the fact that they had earlier given the police that same information. Certainly they were completely available for such questions being asked and such answers given.[20] The two teen-age sons lived with the defendant at the family home. The niece or cousin or friend was a frequent visitor to the defendant's home. One son, John, testified for his father at the hearing on reduction of bail and it was stated that the other son, Ronald, was in the courtroom. Both sons and the niece or cousin or friend, the record shows, were present at the preliminary hearing in this case. Dealing with the duty to disclose exculpatory information, the trial court made no finding as to the information here involved being in the exclusive possession of the prosecution. On

[20] *See: Dumer v. State* (1974), 64 Wis. 2d 590, 604, 219 N. W. 2d 592, where defendant complained that the prosecution had willfully suppressed exculpatory evidence known to it, this court holding: ". . . This evidence, whatever it might be, could have been discovered prior to trial. Defense counsel had an opportunity to question the prosecution witnesses and did not. . . . Dumer offered no excuse or reason for his failure to question these prospective witnesses before trial. . . ."

our review of the record, we find no basis for his doing so then or for our doing so now.

With the duty to disclose under *Nelson-Brady* limited to evidence or testimony which is in the exclusive possession of the state, we move from disclosure to discovery. The two words are not synonymous.[21] Disclosure here relates to the exculpatory evidence contained in statements made by the sons and niece of the defendant. Discovery relates to what the state discovery statute terms the "discovery, inspection or production"[22] of the documents themselves, here for possible use on an issue of credibility, even if subsequent statements by the three witnesses exactly repeated what was earlier said, and for cross-examination of those to whom the statements were made. As to the right to discovery, short of a successful attack, not here made, on the constitutionality of the state discovery and inspection statute,[23] that statute controls as to the rights of a defendant as to discovery and the procedures to be followed in enforcing such rights. The issue not raised, the case being argued here and decided in the trial court on a claimed *Nelson-Brady* duty to disclose, we do not hold the statute here applicable when we note that the statute controls where discovery under the statute is sought. For noncompliance with the provisions of the discovery and inspection statute, only two consequences or sanctions are provided: (1) "exclude any witness not listed or evidence not pre-

---

[21] *Britton v. State, supra,* footnote 8, at pages 117, 118, this court stating: "A distinction must be made between 'disclosure' and 'discovery.' Discovery emphasizes the right of the defense to obtain access to evidence necessary to prepare its own case, while disclosure concerns itself with the duty of the prosecution to make available to the accused the evidence and testimony which, as a minimum standard, is exculpatory based on constitutional standards of due process. . . ."

[22] Sec. 971.23 (7), Stats., *supra,* footnote 7.

[23] Sec. 971.23, Stats.

sented for inspection or copying required by this section, unless good cause is shown," and (2) "The court may in appropriate cases grant the opposing party a recess or a continuance." [24]

If the record here had established a proper foundation for finding that a *Nelson-Brady* duty to disclose evidence in the exclusive possession of the state had been violated, it is clear that declaring a mistrial was not the only curative option before the trial court. Long before the statute made it an appropriate consequence for noncompliance with requirements as to discovery and inspection, this court, in *Wold v. State*,[25] where the district attorney had agreed to reveal results of a crime laboratory test but did not reveal tests subsequently conducted, held: "Perhaps not all evidence which should be disclosed to the defendant need be excluded. The harm may be slight and avoided by a short adjournment to allow the defendant to investigate or acquire rebutting evidence. The penalty for breach of disclosure should fit the nature of the proffered evidence and remove any harmful effect on the defendant." [26] As to the appropriateness of a continuance as the consequence of noncompliance with the witness list requirement of the discovery statute, this court, in *Irby v. State*,[27] stated that: "The granting of a continuance or recess is to be favored over striking the witness." [28] With the situation here presented by defendant's motion for mistrial, if noncompliance with a duty to disclose had been here established, it is clear that it would have been entirely appropriate to have granted a continuance or recess to permit the statements involved to be produced for in-

---

[24] Sec. 971.23 (7), Stats., *supra,* footnote 7.

[25] (1973), 57 Wis. 2d 344, 204 N. W. 2d 482.

[26] *Id.* at page 351.

[27] (1973), 60 Wis. 2d 311, 210 N. W. 2d 755 (footnote 12).

[28] *Id.* at page 322, citing *Williams v. State* (Fla. District Court of Appeal 1972), 264 So. 2d 106.

spection and copying by defense counsel. There is no evidence that the trial court considered this as an alternative corrective consequence that would here have eliminated any possible element of surprise or prejudice to the defendant under these circumstances. That the defendant elected to seek a mistrial did not change or alter the trial court's responsibility to consider the available alternatives to mistrial. While, under these circumstances, defendant's right to have his trial completed by a particular tribunal was waived, there was also involved the "public's interest in fair trials designed to end in just judgments." [29] The issue of abuse of discretion in the trial court's declaring a mistrial rather than granting a continuance is not before us on this appeal, but the absence of a record of exercised discretion in considering and evaluating the available alternatives or options is. Both as to this, and as to the factual basis for defendant's ground for his motion for mistrial, we note the obvious when we state that, where a motion for mistrial is made on the basis of prosecutorial noncompliance with a duty to disclose or defendant's right to discover exculpatory evidence, there is a special need for a record which establishes the relevant and material facts and factors involved in ruling on such motion. Ordinarily a motion for mistrial deals with errors committed during the trial, and the claim of error justifying mistrial is contained in the record of proceedings. Where the ground for mistrial is asserted to be as to pretrial disclosure or discovery, the proceedings shed no light on what occurred before the trial as to demand and compliance with such demand as to disclosure, discovery or

[29] *Wade v. Hunter* (1949), 336 U. S. 684, 689, 69 Sup. Ct. 834, 93 L. Ed. 974, the United States Supreme Court holding: ". . . What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments."

inspection. The mandate of the United States Supreme Court for appellate review including consideration ". . . in light of the State's established rules of criminal procedure, [of] the trial judge's declaration of a mistrial [constituting] an abuse of discretion, . . ." [30] is not directed to this court alone but affects trial courts as well, requiring a record in which alternatives to mistrial are reviewed and evaluated, and all facts and circumstances relied upon in declaring the mistrial are contained in the record of the trial.

*Trial court's granting mistrial with retrial.*

Here the trial court, finding that the state had failed to disclose to defendant, after demand, summaries of statements made by the two sons and a niece or cousin or friend of defendant to the police officers after the shooting, exculpatory in nature, granted defendant's motion for mistrial, made after the state rested, and had the case assigned to a different judge for retrial. The judge to whom the case was assigned for retrial held that double jeopardy prohibitions of the state and federal constitutions barred retrial and dismissed the charge of first-degree murder against the defendant. With the provisions of both state and federal constitutions as to double jeopardy being identical in scope and purpose, we accept as completely controlling the decisions of the United States Supreme Court as to mistrial with retrial, and seek to apply them here to the facts of this case.

The constitutional prohibition against double jeopardy is stated in its fifth amendment to be: ". . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." In an early case, *United States v. Perez,*[31] where the jurors, being unable to agree, were discharged from giving any verdict upon

---

[30] *Illinois v. Somerville, supra,* footnote 3, at page 468.
[31] (1824), 22 U. S. (9 Wheat.) 579, 6 L. Ed. 165 (footnote 5).

the indictment, without the consent of the prisoner, the United States Supreme Court held that the discharge of the jury did not bar retrial, ". . . such a discharge constitutes no bar to further proceedings, and gives no right of exemption to the prisoner from being again put upon trial." [32] Referring to the *Perez Case,* the United States Supreme Court, in *Gori v. United States,*[33] states: "Since 1824 it has been settled law in this Court that 'The double-jeopardy provision of the Fifth Amendment . . . does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment.' . . . Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment. . . ."[34] The United States Supreme Court has also made clear that: " 'This Court has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will be best served . . . .' "[35]

In the case before us we have a mistrial, granted on motion of the defendant and declared in the interest of justice by the trial court. Our court, in this opinion, has indicated serious doubts as to whether granting a recess or continuance, which was an available alternative to declaring a mistrial, would not have been a more appropriate consequence for the claimed lack of full compliance with a demand for disclosure under these facts

[32] *Id.* at page 580.
[33] (1961), 367 U. S. 364, 81 Sup. Ct. 1523, 6 L. Ed. 2d 901.
[34] *Id.* at pages 367, 368.
[35] *Id.* at page 368, quoting *Brock v. North Carolina* (1953), 344 U. S. 424, 427, 73 Sup. Ct. 349, 97 L. Ed. 456.

and circumstances. However, the action of the trial judge in declaring a mistrial, in the interest of justice and on defendant's motion, is not at issue or challenged on this appeal. The general principle, above noted in United States Supreme Court decisions, clearly establishes the general rule or result where a mistrial is declared in the interest of justice and on behest of the defendant.

The defendant by counsel sees an exception to the general rule of permitting retrial after mistrial, even where the defendant moved for the mistrial and his motion was granted, and sees this exception created by the comparatively recent United States Supreme Court cases of *United States v. Tateo*,[36] and the later case of *United States v. Jorn*.[37] The judge to whom this case was assigned for retrial agreed with defendant's counsel that this case came within that exception to the general rule. We agree that a sharply limited exception has been carved out of the general rule of permitting retrial after mistrial where the defendant sought and secured the mistrial. We do not agree that this case comes within such exception.

The exception to the general rule derives not from the holding but from a footnote in the *Tateo* decision.[38] There the court had before it not a motion for mistrial made during trial, but rather the setting aside of a judgment of conviction. The fourth day of the trial of the defendant on a five-count indictment, the trial judge told defendant's counsel that if Tateo were found guilty by the jury he would impose a life sentence for the kidnapping charge and consecutive sentences for the other four charges. Upon being advised of the judge's position and being advised by his counsel that the likelihood of conviction was great, Tateo entered a plea of guilty. In

[36] (1964), 377 U. S. 463, 84 Sup. Ct. 1587, 12 L. Ed. 2d 448.

[37] (1971), 400 U. S. 470, 91 Sup. Ct. 547, 27 L. Ed. 2d 543.

[38] *United States v. Tateo, supra,* footnote 36, at page 468, footnote 3.

subsequent proceedings, before another district judge, the judgment of conviction was set aside and a new trial ordered. Reindicted and brought for retrial before a third district judge, that judge dismissed the charges, holding that there was no waiver of double jeopardy and under the exceptional circumstances there present the government was precluded from retrying him. The United States Supreme Court reversed the judgment of the third district judge, and held that the defendant could be retried, also holding: ". . . If Tateo had *requested* a mistrial on the basis of. the judge's comments, there would be no doubt that if he had been successful, the Government would not have been barred from retrying him." (Emphasis in original.) [39] To this statement, the high court appended this footnote: "3. If there were any intimation in a case that prosecutorial or judicial impropriety justifying a mistrial resulted *from a fear that the jury was likely to acquit the accused,* different considerations would, of course, obtain." (Emphasis supplied.) [40] The importance of the italicized words is obvious from the evident nature of the judicial impropriety at trial and the equally evident fact that the comments of the trial judge were in no way designed to avoid an acquittal.

When the *Tateo* reference to different considerations applying where prosecutorial or judicial impropriety justifying a mistrial "resulted from a fear that the jury was likely to acquit the accused," reappeared in the *Jorn Case*,[41] emphasis on impropriety designed to avoid acquittal was continued. The general rule and exception were there stated by the high court to be: ". . . where

---

[39] *Id.* at pages 467, 468, the high court adding: "See *Gori v. United States,* 367 U. S., at 368; see also 367 U. S., at 370 (dissenting opinion of DOUGLAS, J.). . . ."

[40] *Id.* at page 468, referring to *Gori v. United States, supra,* footnote 33.

[41] *United States v. Jorn, supra,* footnote 37, at page 485.

circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error. . . ."[42] There can be no doubt as to the meaning of "prosecutorial or judicial overreaching," for the high court footnoted the converse of the rule, stating: "Conversely, where a defendant's mistrial motion is necessitated by judicial or prosecutorial impropriety designed to avoid an acquittal, reprosecution might well be barred. . . ."[43] Dissenting in *Jorn*, Mr. Justice STEWART wrote that common ground between majority and dissenters included, as an example of where mistrial might bar future prosecution, the situation where a " 'judge exercises his authority to help the prosecution, at a trial in which its case is going badly, by affording it another, more favorable opportunity to convict the accused.' *Gori v. United States*, 367 U. S. 364, 369. . . ."[44] Common ground that is, and common ground as well is the next sentence in *Gori v. United States*, holding: "Suffice that we are unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that its necessary consequence is to bar all retrial. . . ."[45] The common denominator between *Tateo, Jorn* and *Gori* is their application to mistrials declared on behest and solely on behalf of the defendant.

In the case before us we have a mistrial declared in the interest of justice, not only on motion of the defendant but solely and entirely for his benefit. Under the *Gori* definition, it is certainly "a mistrial granted in the sole interest of the defendant," and such mistrial, under *Gori*, does not bar retrial.

[42] *Id.* at page 485.

[43] *Id.* at page 485, footnote 12.

[44] *Id.* at page 489, Mr. Justice STEWART, dissenting.

[45] *Gori v. United States, supra,* footnote 33, at page 369.

In the case before us we have the prosecutor faulted solely for interpreting the law in this state as not requiring disclosure, under our holdings, or discovery, under our discovery and inspection statute, of materials not in the exclusive possession of the state, and believing that entirely exculpatory statements made by the sons and niece of the defendant were known and available to the defendant. We have held that interpretation of the law correct and that belief not negatived by this record. Even if the prosecutor were wrong in his conclusions, his error would not, under *Jorn,* constitute "prosecutorial overreaching." Even as the law "cannot realistically require that policemen investigating serious crimes make no errors whatsoever," [46] it cannot or should not find "overreaching" or "prosecutorial impropriety" in a good-faith exercise [47] of professional judgment on the part of a prosecutor.

Additionally, in the case before us, the interpretation as to the law and belief as to the facts cannot be found to be conduct "designed to avoid acquittal." Under both *Jorn* and *Tateo,* the judicial or prosecutorial impropriety that warrants banning retrial after mistrial must be "designed to avoid an acquittal." There is no way that a prosecutorial error in judgment, even if labeled as an

[46] *Michigan v. Tucker* (1974), 417 U. S. 433, 446, 94 Sup. Ct. 2357, 41 L. Ed. 2d 182, the high court stating: "Just as the law does not require that a defendant receive a perfect trial, only a fair one, it cannot realistically require that policemen investigating serious crimes make no errors whatsoever. The pressures of law enforcement and the vagaries of human nature would make such an expectation unrealistic. . . ."

[47] No claim is here made that the assistant district attorney who responded to defendant's demand for disclosure did not act in entire good faith. An attorney representing the defendant on the motion to vacate the order of dismissal, stated on behalf of the defendant: "We are not accusing Mr. Donohue of unprofessional conduct or making some deliberate effort to convict an innocent defendant. That's not what we are saying. We are not trying to paint him with a handle bar mustache and a black hat. . . ."

impropriety, could have been designed to produce mistrial, much less secure acquittal in the trial that had not commenced when the judgment was made. There is no basis for suspecting that the prosecutor here could foresee or would have reason to divine that, at a first trial, its case might be ". . . going badly," and that a second trial might afford ". . . another more favorable opportunity to convict the accused." That would take a crystal ball, at least.

Finally, in the case before us, we have no more than a defense claim of less than complete compliance with a defense demand for disclosure of all exculpatory ". . . evidence, tangible or otherwise," to quote the demand, served on the district attorney four days before trial. The claim of noncompliance does not relate to surprise witnesses or unexpectedly damaging evidence, but solely to exculpatory statements made by the two sons and a niece or cousin or friend of the defendant. We have held earlier in this opinion that the defendant could have requested, and the trial court could have granted, a continuance or recess for defense counsel to inspect the statements earlier made as an entirely appropriate consequence of the claimed incomplete disclosure. With such alternative corrective measure available, with continuity of the original trial not interrupted, we see no suggestion in *Gori*, *Tateo* or *Jorn* that the defendant, electing to seek and securing the more drastic consequence of a mistrial, is entitled to raise and prevail on the issue of double jeopardy on the basis of the mistrial granted at his behest and on his behalf.

We conclude that the trial court did not err in directing a retrial after granting defendant's motion for a mistrial. We further conclude that the judge to whom the case was assigned for such trial, did err in holding that the double jeopardy provisions of either the state or federal constitution barred such retrial. The judgment

finding that defendant was placed in double jeopardy and directing dismissal of the charge of first-degree murder against this defendant is reversed, with retrial to proceed from the point in time and under the orders of the court in effect when the judgment of dismissal was entered.

*By the Court.*—Judgment and order reversed, and cause remanded for further proceedings consistent with this opinion.

WILKIE, C. J. *(dissenting)*. I would affirm. Retrial here would constitute a violation of the double jeopardy provision of both the United States [1] and the Wisconsin [2] Constitutions.

The prosecutor was in error in not giving to the defense the three exculpatory statements from the police file when they were requested by defense counsel in the pretrial discovery notice. The three statements definitely go to the principal defense contended for by counsel— self-defense. It does not matter whether the witnesses had also told their stories to defense counsel. These statements had independent value as exculpatory material. They would enhance the credibility of these three witnesses at the trial and they would serve to refresh recollections not only to those who made the statements, but also of the police officers to whom the statements were made.

Circuit Judge HUGH R. O'CONNELL, in granting the defense mistrial motion, stated:

". . . my review of the documents . . . satisfies me that this is the type of matter which is encompassed by *Brady* and *Giles* and should have been produced to the defense at the appropriate stage of these proceedings, for it need not be that the matter tends to exculpate com-

[1] U. S. Const. amend. V.
[2] Wis. Const. art. I, sec. 8.

pletely or is completely exculpatory of the guilt of the defendant, it is simply necessary that the matter is exculpatory or might tend to be exculpatory.

"It occurs to me further that this is material which very appropriately could have prompted cross-examination which, absent an opportunity to review the files in question, could not be conducted; and without saying too much further, it might also tend to show the foundation or lay the foundation for impeachment purposes.

"Consequently, my review indicates that it is material which the State had the duty to disclose to the defense. Now, what sanctions are to be imposed for a failure to comply with the rules set down in *Brady* and *Giles* I have never been quite sure of, but I am sure of this, that the only sanction that is applicable here in the interests of justice is to grant the motion for a mistrial made by Mr. Shellow, which I now do. Motion is granted."

When the case was reassigned to Circuit Judge MAX RASKIN, he granted the motion to dismiss on the ground that retrial would violate the constitutional prohibitions against placing defendants in double jeopardy. He stated:

"The prosecutor knew the effect of the material in his possession. Failure to turn over the statements cannot be said to be due to negligence, inadvertence or excusable oversight. It was a deliberate act, the result of which had the effect of interfering with the defendant's complete opportunity of cross examining State's witnesses. His right to a fair trial and due process were therefore denied.

". . .

"To subject the defendant to another trial would place him in double jeopardy in violation of both the State and Federal Constitutions."

Two reasons are given by the majority why the double jeopardy provisions of the United States and Wisconsin Constitutions do not prevent retrial here: No. 1, the prosecutor acted in "good faith" in not turning over the statements, and No. 2, the fact that defendant had moved for a mistrial now bars him from asserting that double jeopardy bars the new trial.

The decisions of the United States Supreme Court are to the contrary. In the key case of *Brady v. Maryland* [3] the defendant's due process right to examine exculpatory evidence in the prosecutor's file was held to be a fundamental requisite of a fair trial. The court said the failure to release exculpatory evidence upon request to the defendant "violates due process . . . *irrespective of the good faith or bad faith of the prosecution.*" (Emphasis supplied.) [4] Thus, even conceding "good faith" of the prosecution here, that "good faith" would not excuse the prosecutor's error and should not, therefore, justify a retrial of the defendant.

In the recent United States Supreme Court case of *Illinois v. Somerville* [5] a mistrial had been granted where there was a fatally defective indictment that could not under Illinois law be amended. The court said that where the mistrial was necessitated by "an obvious procedural error in the trial," it would not serve " 'the ends of public justice' " to prohibit retrial. [6] However, Mr. Justice REHNQUIST, speaking for the court, also said:

". . . the declaration of a mistrial on the basis of a rule or a defective procedure that would lend itself to prosecutorial manipulation would involve an entirely different question, *cf. Downum v. United States* . . . ." [7]

In *Downum* [8] the prosecutor went to trial and when a key witness could not be found the trial court declared a mis-

[3] (1963), 373 U. S. 83, 83 Sup. Ct. 1194, 10 L. Ed. 2d 215.

[4] *Id.* at page 87. *Accord: Nelson v. State* (1973), 59 Wis. 2d 474, 208 N. W. 2d 410.

[5] (1973), 410 U. S. 458, 93 Sup. Ct. 1066, 35 L. Ed. 2d 425.

[6] *Id.* at page 464. For an example of the kind of error leading to mistrial that should not defeat retrial, *see State v. Elkinton* (1972), 56 Wis. 2d 497, 202 N. W. 2d 28.

[7] *Id.*

[8] *Downum v. United States* (1963), 372 U. S. 734, 83 Sup. Ct. 1033, 10 L. Ed. 2d 100.

trial at the prosecutor's instance. The supreme court held retrial barred. Although the prosecutor apparently was aware that the witness was not present when the trial began, there was no discussion in *Downum* or in *Somerville* concerning the prosecutor's good faith or bad faith.

The fact that defense counsel himself moved for mistrial does not mean he has waived the right to assert double jeopardy as a defense to retrial. In *Gori v. United States,* the supreme court held that retrial was permissible following a mistrial declared in the sole interests of the defendant. The majority heavily relies on this test. However, *Gori* was expressly repudiated in *United States v. Jorn,* where the court said that deciding double jeopardy questions based on:

". . . an appellate court's assessment of which side benefited from the mistrial ruling does not adequately satisfy the policies underpinning the double jeopardy provision. Reprosecution after a mistrial has unnecessarily been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action." [9]

In *Jorn* the defendant was charged with willfully assisting in the preparation of fraudulent income tax returns. The trial judge declared a mistrial sua sponte based on his belief that certain government witnesses, clients of defendant, had not been sufficiently warned about possible criminal liability flowing from their testimony. The United States Supreme Court held the mistrial improvidently granted and therefore ruled that the double jeopardy clause barred retrial.[10] In that opinion, in dis-

---

[9] (1971), 400 U. S. 470, 483, 91 Sup. Ct. 547, 27 L. Ed. 2d 543.

[10] The supreme court said that the trial court insufficiently considered alternative procedures, such as a continuance, and thereby foreclosed "the defendant from a potentially favorable

cussing a defendant's " 'valued right to have his trial completed by a particular tribunal' " protected by the double jeopardy clause, the court indicated that ordinarily where the defendant himself moves for a mistrial he waives that right. In cases involving "prosecutorial or judicial overreaching," however, a different result obtains.

". . . where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution even if the defendant's motion is necessitated by prosecutorial or judicial error." [11]

The court added in a footnote:

"Conversely, where a defendant's mistrial motion is necessitated by judicial or prosecutorial impropriety designed to avoid an acquittal, reprosecution might well be barred. *Cf. United States v. Tateo* . . . ."[12]

In *United States v. Tateo*,[13] the supreme court held that a defendant whose guilty plea is overturned because not voluntary, but induced in part by comments of the trial judge, may be tried again. In dicta the court said, in part:

". . . If Tateo had *requested* a mistrial on the basis of the judge's comments, there would be no doubt that if he had been successful, the Government would not have been barred from retrying him." [14]

However, the court qualified this conclusion in a footnote:

judgment by the tribunal" without a manifest public necessity to do so. *Id.* at pages 486, 487.

[11] *Id.* at page 485.

[12] *Id.* at page 485, note 12.

[13] (1964), 377 U. S. 463, 84 Sup. Ct. 1587, 12 L. Ed. 2d 448.

[14] *Id.* at page 467.

"If there were any intimation in a case that prosecutorial or judicial impropriety justifying a mistrial resulted from a fear that the jury was likely to acquit the accused, different considerations would, of course, obtain." [15]

Thus it is clear, as far as the United States Supreme Court is concerned, the determination of whether retrial is possible following mistrial is made by balancing the interests of the defendant and the state, not by application of mechanical rules. Ordinarily, where the defendant himself moves for mistrial, he waives any right to claim that retrial is barred. However, where his motion is necessitated by "prosecutorial or judicial overreaching," there is no waiver. Retrial is prohibited where the prosecutorial or judicial action causing the mistrial was "designed to avoid an acquittal," or where the rule or defective procedure leading to mistrial "would lend itself to prosecutorial manipulation."

Clearly the knowing refusal to release exculpatory evidence prior to trial is this kind of procedure and I would hold that the defendant may not be retried. This severe sanction is necessary if the double jeopardy provisions of both the federal and Wisconsin constitutions are to have meaning, and if the basic constitutional rights of citizens accused of crime are to be protected. Dismissal is strong medicine, but as the United States Supreme Court said in *Brady*:

". . . Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." [16]

I have been authorized to state that Mr. Justice HEFFERNAN joins in this dissent.

---

[15] *Id.* at page 468, note 3.

[16] *Brady v. Maryland* (1963), 373 U. S. 83, 87, 83 Sup. Ct. 1194, 10 L. Ed. 2d 215.